UNITED STATES DISTRICT COURT                    <u>ELECTRONIC PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALAVITA WILLIAMS, individually and as alleged
sole managing member of 113-38 Springfield Blvd.,
LLC.,

                    *Plaintiff,*                    MEMORANDUM
     -against-                                   <u>AND ORDER</u>
                                                 09-CV-1816 (JG)(RML)

ARIES FINANCIAL, LLC., WALL STREET
MORTGAGE BANKERS LTD., INDIGO
MANAGEMENT, BERKSHIRE FINANCIAL GROUP,
INC., ALBERT O. LONDON, DOUGLAS KAHAN,
DAVID APPLEMAN, RONNIE EBRANI AND DLJ
MORTGAGE CAPITAL, INC.,

                    *Defendants.*
-------------------------------------------------------------------X
A P P E A R A N C E S:

       THE LEGAL AID SOCIETY
       120-46 Queens Boulevard
       3rd Floor
       Kew Gardens, New York 11415
       By:    Sumani Lanka
       *Attorneys for the Plaintiff*

       FITZPATRICK, CELLA, HARPER & SCINTO
       1290 Avenue of the Americas
       New York, New York 10104-3800
       By:    Donald J. Curry
                 Margaret A. Radzik
       *Attorneys for the Plaintiff*

       FRIEDMAN, HARFENIST, KRAUT & PERLSTEIN
       3000 Marcus Avenue
       Suite 2E1
       Lake Success, New York 11042
       By:    Steven J. Harfenist
                 Neil Torczyner
       *Attorneys for Defendant Wall Street Mortgage Bankers, Ltd.*

ECKERT SEAMANS CHERIN & MELLOTT, LLC
10 Bank Street
Suite 1061
White Plains, New York 10606
By:    Geraldine A. Cheverko
*Attorneys for Defendant DLJ Mortgage Capital, Inc.*

JOHN GLEESON, United States District Judge:

In May 2009, Alavita Williams filed her complaint in this action, alleging violations of federal and state laws. The claims arise out of a series of events in which, Williams alleges the defendants induced her to refinance the mortgage on her home at an inflated loan amount in May 2006 and again in March 2007. In her complaint, Williams names, among others, Wall Street Mortgage Bankers Ltd. ("WSMB") and DLJ Mortgage Capital, Inc. ("DLJ") as defendants. Specifically, Williams alleges that WSMB violated the Federal Truth-in-Lending Act and the Real Estate Settlement Procedures Act, that its actions were fraudulent and unconscionable and that it was involved in a civil conspiracy with the other named defendants to commit fraud. Williams alleges that DLJ, as an assignee of her home's mortgage and note, is liable for all claims brought against WSMB.

On October 9, 2009, WSMB and DLJ each moved to dismiss all of the claims against them. WSMB moves pursuant to Fed. R. Civ. P. 12(c), and DLJ moves pursuant to Fed. R. Civ. P. 12(b)(6). I heard oral argument on the motions on November 13, 2009. For the reasons stated below, the motions to dismiss are granted in part and denied in part.

BACKGROUND

The following facts, taken from the plaintiff's complaint, are assumed to be true for the purposes of this motion.

In July 2001, Williams purchased a home for the first time. In April 2004, due to litigation costs and costs associated with repairs to the home, Williams began falling behind on

her mortgage payments.  Five months later, Washington Mutual, the holder of Williams's first mortgage, began a foreclosure action against Williams.  The present action arises out of mortgages and deed transfers executed on May 2, 2006 and March 21, 2007 following the initiation of the foreclosure action by Washington Mutual.

A.    *The May 2, 2006 Refinancing*

In late April 2006, Ronnie Ebrani, a Berkshire Financial Group, Inc. ("Berkshire") loan officer, called Williams and informed her that he could assist her in avoiding foreclosure by refinancing her mortgage loan.  A few days later, Ebrani visited Williams's home and convinced her that the only way to avoid losing her home was to refinance.  Ebrani also informed Williams that she would have to refinance again the following year, which was necessary and customary with those types of transactions.  Ebrani dissuaded Williams from retaining her own attorney to represent her at the closing, assuring her that he would take care of everything.

In May 2006, Williams met Ebrani at Berkshire's Staten Island offices for the closing of the mortgage with Aries Financial, LLC.  Albert O. London (a managing member of Aries Financial), David Appleman (who purportedly represented Indigo Management) and Douglas Kahan (the settlement agent) also attended the closing.  At the closing, Ebrani again told Williams that she did not need an attorney.  He instructed her to sign many documents, and rushed her through the paperwork without explaining any of the documents.

Unbeknownst to Williams, one of the documents she executed at the closing was a subordinate mortgage of $6,610[1] with Indigo Management, a company she had never heard of

---

[1]    There is a discrepancy in Williams's complaint.  Paragraph 31 states that the subordinate mortgage was valued at $6,610; ten paragraphs later the complaint states the value to be $6,900.  For the purposes of this motion, the amount is not dispositive.  However, Williams should ensure that the correct amount is noted in her amended complaint.

before.   Appleman, who was present at both the 2006 and 2007 closings, was Chairman and CEO of Indigo Management.  In addition, Williams unknowingly signed a document transferring the deed to her home to 113-38 Springfield Blvd., LLC.  Williams was named as the sole manager of the LLC.  The loan amount was $250,800 and the interest rate was 15%.  The monthly mortgage payments amounted to $3,135.

Ebrani told Williams she would not need to make mortgage payments for a year, because those payments would be paid from monies held in escrow.  Aries Financial placed $37,620 of the mortgage proceeds into an escrow account, from which it paid itself interest-only payments on the mortgage for a year.

In October 2006, the roof of Williams's home caved in.  Ebrani informed her that she would have to fix the roof before she could refinance her mortgage again.  Williams paid out-of-pocket to fix the roof.

B.    *The March 21, 2007 Refinancing*

In early 2007, Ebrani contacted Williams to arrange the second refinancing of her mortgage loan.  He told her the loan would be refinanced with WSMB.  On March 21, 2007, Williams attended the closing at the offices of Carone & Associates in Brooklyn, New York.  Also in attendance was David Appleman, who was now a WSMB representative, and another individual purportedly from Berkshire.  Ebrani again told Williams that she need not have an attorney present to represent her at the closing.

The WSMB refinancing loan was for $282,750, with an initial interest rate of 10.5% and monthly payments of $2,895.63.  At the closing, Williams signed many papers, including two different sets of the Uniform Residential Loan Application, the Good Faith Estimate, the Mortgage, the Itemization of Amount Financed and the TILA Disclosure

Statement.  One set of documents disclosed the loan amount as $275,000, while the other showed

the amount to be $282,750.  The two TILA Disclosure Statements disclosed different APR and

finance charges.  Also on March 21, 2007, the deed to Williams's home was transferred back

from 113-38 Springfield Blvd., LLC (to which Williams had unknowingly deeded the property a

year earlier) to Williams.  Williams was again unaware of this deed transfer.  Williams was able

to make three monthly payments on the 2007 mortgage loan, but then fell behind.

DISCUSSION

A.      *Motions to Dismiss*

        Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual,

sufficiency of a complaint.  *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule

12(b)(6) stage, 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the

claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143

F.3d 698, 701 (2d Cir. 1998))).  Accordingly, I must accept the factual allegations in the

complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*), and draw all

reasonable inferences in favor of the plaintiff.  *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465,

469 (2d Cir. 1995).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009).  "A motion to dismiss under Rule 12(c) is governed by the same standard as a

motion under Rule 12(b)(6)."  *Ades & Berg Group Investors v. Breeden,* 550 F.3d 240, 243 n. 4

(2d Cir. 2008).

        In its recent decision in *Iqbal*, the Supreme Court offered district courts additional

guidance regarding the consideration of motions to dismiss under Rule 12(b)(6).  Citing its

earlier decision in *Twombly*, 550 U.S. 544, the Court explained:

5

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

129 S. Ct. at 1949 (citations and internal quotation marks omitted).

B.       *DLJ as a Holder in Due Course*

      As an assignee of the WSMB mortgage, DLJ is liable for all claims that Williams can bring against WSMB. N.Y. U.C.C. § 3-306 ("Unless he has the rights of a holder in a due course any person takes the instrument subject to all valid claims to it on the part of any person."). If, however, DLJ is a holder in due course, Williams cannot assert any of her claims against it, *see United States v. Autorino,* 381 F.3d 48, 55 (2d Cir. 2004), except for her claim for rescission under TILA, *see infra* § C.

      The parties agree that the New York Uniform Commercial Code ("UCC") governs this transaction. UCC § 3-305 establishes the rights of a holder in due course. The provision dictates that, except in certain situations that are not invoked by Williams here, a holder in due course takes an instrument free from "all claims to it on the part of any person." N.Y. U.C.C. § 3-305. In order to be a holder in due course, DLJ must have taken a negotiable instrument "(a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *Id.* at § 3-302.

      The parties disagree about whose burden it is to establish DLJ's status (or lack thereof) as a holder in due course. The UCC anticipates the use of the holder in due course doctrine by a plaintiff; it states that once a party demonstrates that a defense to payment exists, "a person claiming the rights of a holder in due course has the burden of establishing that he or

some person under whom he claims is in all respects a holder in due course." N.Y. U.C.C. § 3-307. More specifically, once a defense to a party's claim as holder of a negotiable instrument is established by a preponderance of the evidence, the burden shifts back to the plaintiff to establish, by a preponderance of the evidence and with "affirmative proof," that he or she is a holder in due course. Official Comment to the N.Y. U.C.C. § 3-307. Here, however, it is the defendant, DLJ, who is claiming to be a holder in due course.

DLJ claims that in order to survive a motion to dismiss, Williams must allege in her complaint that DLJ is not a holder in due course in order to survive a motion to dismiss, which she has failed to do. Williams alleges that DLJ must prove its status as a holder in due course. The case law on this issue is not clear. DLJ cites two cases requiring the plaintiff to allege that the defendant is not a holder in due course. *Transglobal Mktg. Corp. v. Derfner & Mahler, LLP,* 246 A.D.2d 482, 483 (1st Dep't 1998); *Wilson v. Toussie,* 260 F. Supp. 2d 530, 544 (E.D.N.Y. 2003). However, there are several other cases that require proof by the party claiming the rights of the status. *Crossland Sav., FSB v. Foxwood & S. Co.,* 202 A.D.2d 544, 545 (2d Dep't 1994); *Countrywide Home Loans, Inc. v. St. Louis,* 290 B.R. 1, 8 (E.D.N.Y. 2003); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 672 (7th Cir. 2008).

I conclude that it would be unfair to require Williams to allege in her complaint that DLJ is *not* a holder in due course. Under the motion to dismiss standard as clarified by the Supreme Court in *Iqbal,* in order to state a claim for relief, a plaintiff must provide, in her complaint, "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 129 S. Ct. at 1949 (citation and internal quotation marks omitted). If DLJ is correct, Williams's complaint would be facially plausible only if Williams alleges facts that

plausibly established that DLJ is not a holder in due course.  There are no doubt instances in which a plaintiff can make such an allegation in good faith, including when the instrument, on its face, is not a negotiable instrument.  However, in cases where the facts in dispute are whether the defendant took the instrument for value, or whether the defendant took it "in good faith" and "without notice … of any defense against it or claim for it," it would often be impossible for the plaintiff to allege "sufficient factual matter" to state such a claim in her complaint; the documents and other information detailing the events of the transfer are often peculiarly within the knowledge of the defendant who claims holder in due course status, and the plaintiff's access to them is only through the tools of discovery.

Furthermore, the determination of holder in due course status requires the evaluation of evidence, which is not appropriately done at the motion to dismiss stage (and indeed no evidence has been presented to me on this motion).  The determination of whether DLJ is a holder in due course is thus more appropriate for a motion pursuant to Rule 56.  *See Countrywide Home Loans,* 290 B.R. at 9-13.  If Williams can establish a defense to DLJ's claim for payment of the mortgage loan, then the burden of proof will shift to DLJ to prove it is a holder in due course.  Through a motion for summary judgment, after discovery has been completed, DLJ can challenge Williams's defense to DLJ's status as holder of the loan or it can "cut off that defense by claiming holder-in-due-course immunity."[2]  *A.I. Trade Fin. v.*

---

[2]     DLJ makes other arguments in its reply papers regarding its status as a holder in due course.  First, it asserts that the mortgage is a negotiable instrument.  Although DLJ is accurate that a mortgage note *can* be a negotiable instrument, *Wilson,* 260 F. Supp. 2d at 542-43, there are instances in which it is not, including when the mortgage contains an additional promise in the agreement, *P & K Marble, Inc. v. La Paglia,* 537 N.Y.S.2d 682, 683 (3d Dep't 1989).  Second, as to the requirements that a holder in due course take the instrument in good faith and without notice of any defense, DLJ correctly argues that the burden of establishing these elements is "a slight one."  *First Int'l Bank, Ltd. v. L. Blankenstein & Son, Inc.,* 465 N.Y.S.2d 888, 892 (1983).  However, the burden still exists.  The party claiming holder in due course status must provide *some* evidence that it has taken the note in good faith and without notice.  As the case cited by DLJ establishes, an affidavit submitted by DLJ would be sufficient for these purposes. *Ecoban Capital Ltd. v. Ratkowski,* 712 F. Supp. 1120, 1122-23 (S.D.N.Y. 1989) ("According to [Ecoban's] unrebutted affidavit, Ecoban had no knowledge of any claims or defenses against the

*Laminaciones de Lesaca, S.A.*, 41 F.3d 830, 836 (2d Cir. 1994)(stating that immunity must be proven by the holder to a preponderance of the evidence).

        Accordingly, I hold that Williams is not required to plead that DLJ is not a holder in due course in her complaint.  I conclude that the question of DLJ's status is not appropriately decided at this stage, and therefore I assume for the purposes of this motion that all claims, except Williams's claim under TILA (for the reasons stated below in § C), which are properly brought against WSMB can be brought against DLJ.

C.     *Plaintiff's Claim Pursuant to the Truth-in-Lending Act*

        The Truth-in-Lending Act ("TILA") was enacted by Congress "to assure a meaningful disclosure of credit terms … and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601.  Williams alleges that the defendants violated TILA by failing to disclose, as required by the statute, the terms of the mortgage loan to Williams.

     1.     *Statute of Limitations*

     A.     *Right of Rescission*

        WSMB and DLJ argue that Williams's claim under TILA is barred by a one-year statute of limitations.  The defendants are correct that a suit brought pursuant to 15 U.S.C. § 1640(e) requires a plaintiff to bring a TILA claim within one year of the "date of the occurrence or violation."  However, in her complaint and subsequent pleadings, Williams specifically cites to TILA's extended statute of limitations for rescission.  Pursuant to 15 U.S.C. § 1635(f), Williams right to rescission "expire[s] three years after the date of consummation of the transaction" if the proper disclosures were not made.  In addition to rescission, Williams is

Note."); *A.I. Trade Fin.*, 41 F.3d at 836-37("Such an affidavit, 'while necessarily conclusory in form,' may nevertheless be enough to place on the maker the burden of coming forward with evidence sufficient to raise a

entitled to recover the costs of this action as well as reasonable attorney's fees.  15 U.S.C. § 1640(a)(3)(" in any action in which a person is determined to have a right to rescission under section 125 [15 U.S.C. § 1635], the costs of the action, together with a reasonable attorney's fee as determined by the court" will be awarded).  Williams sufficiently pleads that the defendants violated TILA's disclosure and rescission requirements by:  (a) failing to provide the required disclosures prior to the consummation of the transaction; (b) failing to provide required disclosures clearly and conspicuously in writing; (c) failing to disclose clearly and conspicuously the amount financed; and (d) failing to provide two copies of the notice of the right to rescind and an accurate date for the expiration of the rescission period.

It is clear that that the statute of limitations for "'closed-end credit' transactions such as mortgages" begins running on "the date on which a plaintiff enters into a loan agreement."  *Barkley v. Olympia Mortgage Co.,* 2007 U.S. Dist. LEXIS 61940, at *56 (E.D.N.Y. Aug. 22, 2007)(citing *Lewis v. Nissan N. Am., Inc., Corp.,* 2004 U.S. Dist. LEXIS 18742, at * 9 (Sept. 17, 2004)); *see also Boursiquot v. Citibank F.S.B.,* 323 F. Supp. 2d 350, 353 (D. Conn. 2004)("It is well settled that the 'occurrence of the violation' means the date the plaintiff enters the loan agreement or, in the alternative, when the defendant performs by transmitting the loan funds to the plaintiff.").  The loan was consummated in May of 2007 and Williams filed her complaint in May 2009.  As Williams commenced this action two years after the consummation of the loan agreement, the three-year statute of limitations applicable to the right of rescission does not bar her claim.

---

genuine issue as to the holder's notice of defenses.").

B.      *Statutory Damages*

Williams further claims that she is entitled to damages pursuant to 15 U.S.C. § 1640.  The defendants argue that the one-year statute of limitations bars any claim for actual damages brought by Williams.

1.      *Applicable Statute of Limitations*

Section 1635, which provides Williams with a right to rescission, states that "[i]n any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 130 [15 U.S.C. § 1640] for violations of this title [15 U.S.C. § 1601 *et seq.*] not relating to the right to rescind."  15 U.S.C. § 1635(g).  However, § 1640 contains a statute of limitations of one year.  There is no indication in the statute or legislative history that Congress intended to alter the statute of limitations applicable to a claim for damages just because it was brought in conjunction with a suit for rescission.  *Brown v. Nationscredit Fin. Servs. Corp.,* 349 F. Supp. 2d 1134, 1137-38 (N.D. Ill. 2005); *see also Consumer Solutions Reo, LLC v. Hillery,* 2009 U.S. Dist. LEXIS 76244, at *7-10 (N.D. Cal. Aug. 26, 2009); *Rodrigues v. Members Mortgage Co., Inc.,* 323 F. Supp. 2d 202, 209-10 (D. Mass. 2004); *Briscoe v. Deutsche Bank Nat'l Trust Co.,* 2008 U.S. Dist. LEXIS 90665, at *11-13 (N.D. Ill. Nov. 7, 2008); *but see McIntosh v. Irwin Union Bank & Trust Co.,* 2003 U.S. Dist. LEXIS 8083, at *14 (D. Mass. May 13, 2003).

In fact, § 1640 also states "in the case of any successful action to enforce the foregoing liability [for damages] or in any action in which a person is determined to have a right of rescission" pursuant to § 1635, the court shall award attorney's fees and costs.  15 U.S.C. § 1640(a)(3).  If Congress intended for a claim for rescission to extend the statute of limitations for a damages suit, then the latter half of this provision would be unnecessary, because attorney's

fees and costs would already be recoverable pursuant to the damages provision.  Rather, the effect of § 1635(g), read in the context of the statute as a whole, simply permits the plaintiff to bring a claim for damages and rescission simultaneously.  *Brown,* 249 F. Supp. 2d at 1137. Accordingly, the one-year statute of limitations applies to Williams's claim for damages under TILA.

2.      *Equitable Tolling*

Williams alleges that the statute of limitations should be equitably tolled due to the defendants' alleged fraudulent concealment.   Although the Second Circuit has not yet resolved the issue, every circuit court that has considered the issue has held that equitable tolling principles apply to TILA.  *McAnaney v. Astoria Fin. Corp.,* 2007 U.S. Dist. LEXIS 67552 at *22-23 (E.D.N.Y. Sept. 12, 2007)(citing *Ellis v. GMAC,* 160 F.3d 703, 706-08 (11th Cir. 1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 504 (3d Cir. 1998); *Jones v. TransOhio Savings Ass'n.,* 747 F.2d 1037, 1041 (6th Cir. 1984); *King v. California,* 784 F.2d 910, 914-15 (9th Cir. 1986)); *see also Weil v. Long Island Savings Bank, FSB,* 77 F. Supp. 2d 313, 322 (E.D.N.Y. 1999)(*citing Kerby v. Mortgage Funding Corp.,* 992 F. Supp. 787, 797 (D. Md. 1998)).

Equitable tolling is available in "rare and exceptional circumstances,' where [the court finds] that 'extraordinary circumstances' prevented the party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'"  *Walker v. Jastremski,* 430 F.3d 560, 563 (2d Cir. 2005)(quoting *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir. 2004)(alteration in original)).  The Second Circuit has held that equitable tolling is appropriate "[w]here [the] defendant is responsible for concealing the existence of plaintiff's cause of action."  *Veltri v. Bldg. Serv. 32b-J Pension Fund,* 393 F.3d 318,

322 (2d Cir. 2004).  In order to establish fraudulent concealment, a plaintiff must "allege that the defendant committed either: (1) a 'self-concealing act' -- an act committed during the course of the breach that has the effect of concealing the breach from the plaintiff; or (2) 'active concealment' -- an act distinct from and subsequent to the breach intended to conceal it." *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 189 (2d Cir. 2001).

Williams has alleged that the defendants committed several self-concealing acts during the consummation of the mortgage loan, including:

> conceal[ing] from [Williams] the true nature of its sham refinance loan transaction by failing to accurately disclose the loan terms, the amount financed, and the finance charges, concealing and misrepresenting the significance of the papers Williams signed at the closings, persuading Williams not to retain an attorney of her own choosing at the closing, and failing to provide the proper pre-disclosures prior to the loan consummation.

Pl. Mem. of Law at 8.  The essence of Williams's argument is that the defendants' failure to disclose the terms of the loan amounted to fraudulent concealment.  However, "the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations."  *Cardiello v. Money Store, Inc.,* 2001 U.S. Dist. LEXIS 7107, at *15-16 (S.D.N.Y. June 1, 2001)(quoting *Pettola v. Nissan Motor Accept. Corp.,* 44 F. Supp. 2d 442, 450 (D. Conn. 1999)).  If nondisclosure tolled the statute of limitations for a claim brought based on the nondisclosure, the statute of limitations would have no effect.  *Id.* at *16.

Williams also alleges that the defendants fraudulently concealed their actions by dissuading her from bringing an attorney with her.  There are no allegations, however, that the defendants took affirmative steps to prohibit Williams from bringing an attorney or an independent advisor to the closing.  Williams was still free to bring an attorney if she so chose to do so.

I hold that the circumstances of this case do not justify the application of equitable tolling.  Accordingly, Williams's claim for statutory damages under TILA is barred by the statute of limitations.

2.      *Assignee Liability*

In its reply brief, DLJ asserts that Williams has failed to allege sufficient facts to establish assignee liability pursuant to TILA's restrictions on the liability of creditors for consumer credit transactions secured by real property.  The cited provision states:

> Except as otherwise specifically provided in this title, any civil action against a creditor for a violation of this title or proceeding under section 108, which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.

15 U.S.C. § 1641(a)(citations omitted).

The cited provision specifically states "[e]xcept as otherwise specifically provided in this title."  15 U.S.C. § 1641(a).  Later in this section of TILA, the statute states that "[a]ny consumer who has the right to rescind a transaction under section 125 [15 U.S.C. § 1635] may rescind the transaction as against the assignee of the obligation."  Unlike the other provisions in this section, including the one cited by the defendants, this subchapter does not contain a conditional clause, and thus the consumer has a right to rescind against any assignee, regardless of whether the violation was apparent on the face of the disclosure.  *McMaster v. CIT Group/Consumer Fin., Inc.,* 2006 U.S. Dist. LEXIS 28831, at *15-16 (E. Dist. Pa. May 11, 2006).

Furthermore, this provision extinguishes any benefit of being a holder in due course.  *Murry v. America's Mortgage Banc., Inc.,* 2004 U.S. Dist. LEXIS 12818, *11 (N.D. Ill. July 6, 2004)("TILA's rescission provision effectively abrogates the holder in due course rule.");

14

*see also Diaz v. Paragon Motors of Woodside, Inc.,* 424 F. Supp. 2d 519, 544 (E.D.N.Y.
2006)(TILA's assignee liability provision modifies the reach of the Federal Trade Commission's
Holder Rule)(quoting *Taylor v. Quality Hyundai Inc.,* 150 F.3d 689 (7th Cir. 1998)); *Ramadan,*
229 F.3d 194 (same); *Green v. Levis Motors, Inc.,* 179 F.3d 286 (5th Cir. 1999)(same); *Ellis v.
Gen. Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir. 1998)(same).  The UCC provision
providing for the benefits of holder in due course status "must be read in light of other laws that
modify its reach."  *Taylor,* 150 F.3d at 693.  Accordingly, even if DLJ is able to establish its
status as a holder in due course, Williams's TILA claim is valid as long as DLJ is the assignee of
the WSMB mortgage loan.

D.    *Plaintiff's Claim Under the Real Estate Settlement Procedures Act*

Williams alleges that the defendants violated the Real Estate Settlement
Procedures Act ("RESPA"), 12 U.S.C. § 2607, by giving a "portion, split, or percentage of [the]
charge … received for the rendering of a real estate settlement service … other than for services
actually performed."  Compl. at 22-23.  Defendants argue that Williams's claim under RESPA is
barred by the statute of limitations.  The statute of limitations for claims brought under § 2607 of
RESPA is one year from the date of the occurrence of the violation.  12 U.S.C. § 2614.  It is
well-settled that in closed-end transactions, such as mortgage loans, the date of accrual for the
statute of limitations is the date the plaintiff entered the loan agreement.  *Cardiello,* 2001 U.S.
Dist. LEXIS at *11-12; *see supra* at 9-10.  As Williams entered into the loan agreement more
than one year prior to the filing of her complaint, her claim is barred by the statute of limitations
unless the statute is tolled.

Williams alleges that the statute of limitations should be equitably tolled due to
the defendants' alleged fraudulent concealment.  The Second Circuit has not yet applied

equitable tolling principles to RESPA, but district courts in this circuit have applied these principles to RESPA. *Moll v. U.S. Life Title Ins. Co.,* 700 F. Supp. 1284, 1287-89 (S.D.N.Y. 1988); *McKay v. Sacks,* 2005 U.S. Dist. LEXIS 43347, at *12 (E.D.N.Y. May 20, 2005). The Second Circuit has articulated a strong policy in favor of the use of tolling principles, reading equitable tolling into every federal statute of limitations "unless Congress expressly provides to the contrary in clear and unambiguous language." *Moll,* 700 F. Supp. at 1287-88 (quoting *Atlantic City Elec. Co. v. Gen. Elec. Co.,* 312 F.2d 236, 241 (2d Cir. 1962)). Since no such clear and unambiguous language exists in RESPA, I apply equitable tolling principles to Williams's case.

As stated above, I hold that equitable tolling is not warranted in this case. Since the alleged RESPA violation involves giving a portion of the charge received by the defendants for purposes other than services rendered, the defendants' failure to disclose the terms of the loan to Williams is irrelevant for the tolling inquiry as to RESPA. In this case, an alleged "kickback" was paid through a subordinate mortgage to Indigo Management during the 2006 transaction. At oral argument, Williams further alleged that other fees charged to Williams, including post-closing and recording fees, violated this provision of RESPA. Williams essentially argues that the statute of limitations should be tolled because the defendants did not inform her of the true purpose for the subordinate mortgage or of the other fees. However, "[c]oncealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Moll,* 700 F. Supp. at 1291 (quoting *Wood v. Carpenter,* 101 U.S. 135, 143 (1879)). For the reasons stated above, Williams's allegation that the defendants dissuaded her from bringing an attorney to the closing is not persuasive. Williams does not allege there was any "trick or contrivance" involved in the defendants' actions.

Furthermore, the existence of this subordinate mortgage was known or should have been known to Williams because she signed the paperwork authorizing the mortgage. There is no allegation that she asked why the mortgage was taken out and was lied to or took any reasonable steps to discover its purpose.  Therefore, she did not act with "reasonable diligence" throughout the two years following the 2007 mortgage.

The facts alleged here do not warrant the invocation of equitable tolling.  *See Wallace v. Kato,* 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances.").  Accordingly, Williams's RESPA claim is barred by the statute of limitations.

E.     *Plaintiff's Fraud Claim*

In her eleventh cause of action, Williams alleges that WSMB made material misrepresentations and concealed material facts during the 2007 mortgage transaction.  The defendants contend that the fraud claim should be dismissed because it is not pled with sufficient particularity.

Under New York law, in order to bring a claim for fraudulent misrepresentation, a plaintiff must allege "a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and the resulting injury."  *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291 (2d Cir. 2006).  A cause of action for fraudulent concealment is appropriate where there a duty on the part of the defendant to disclose material information and it failed to do so.  *Id.* at 291-92. The Federal Rules of Civil Procedure require that a party alleging fraud "must state with particularity the circumstances constituting fraud ….  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Second

17

Circuit has held that compliance with Rule 9(b) requires a plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner,* 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

Williams has included only a general list of allegedly fraudulent actions taken by a wider class of defendants during the 2006 and 2007 mortgage transactions.  She does not specify, as required, which defendant made which false representation.  Furthermore, Williams has not alleged any facts regarding her reliance on the defendants' alleged fraudulent misrepresentations and concealment.  *See Lerner,* 459 F.3d at 292 (reliance a requirement for fraudulent concealment).  As Williams has not stated her fraud claims with particularity, the defendants' motion to dismiss is granted.  However, I grant Williams's request for leave to amend her complaint to attempt to plead her claim of fraud with the requisite particularity.

F.    *Plaintiff's Claim for Civil Conspiracy*

Williams alleges that the defendants knowingly and intentionally participated in a civil conspiracy to commit fraud.  Compl. 25-26.  A claim for civil conspiracy is only actionable if the complaint states a claim for the underlying tort.  *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 401 (2d Cir. 2006); *see also Fisher v. Big Squeeze (N.Y.) Inc.,* 349 F. Supp. 2d 483, 489 (E.D.N.Y. 2004).  Accordingly, the claim for civil conspiracy must fail unless Williams's amended complaint sufficiently pleads fraud.  Unless and until that occurs, the defendants' motion to dismiss Williams's claim for civil conspiracy is granted.

G.      *Plaintiff's Claim Under New York General Business Law § 349*

Williams alleges that the defendants violated New York State's Deceptive Practices Act, N.Y. General Business Law § 349.  In order to state a claim under the Deceptive Practices Act, Williams must allege:  "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir. 2009).  The defendants contend that Williams has failed to allege the misleading acts taken by the defendants or Williams's resulting injury. The defendants further argue that if the fraud allegations fail to state a claim with particularity, Williams's claim pursuant to the Deceptive Practices Act must also fail.  WSMB Mem. of Law at 17.  However, the Second Circuit has held that a violation of § 349 does not require proof of the same elements as common law fraud, and thus "an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)."  *Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005).

Williams alleges that the mortgage loan was a consumer-oriented act with "a broad impact on consumers."  Compl. at 29.  Williams also alleges that WSMB refinanced the Aries loan for a higher loan amount on terms they knew she could not afford.  Pl. Mem. of Law at 15.  In addition, as alleged several times throughout her complaint, Williams alleges WSMB failed to properly disclose the amount and terms of the loan.  Further, Williams alleges that the actions taken by the defendants caused equity to be skimmed from her home and caused her to enter into an agreement requiring her to make payments she could not afford.

As Williams has sufficiently pled a cause of action under § 349, the defendants' motion to dismiss this claim is denied.

H.      *Plaintiff's Claim for Unconscionability*

Williams alleges that the 2006 and 2007 mortgage transactions were procedurally and substantively unconscionable.  WSMB argues that the 2007 mortgage transaction is not substantively unconscionable because it reduced plaintiff's interest rate and lowered her monthly payments.

To state a claim for unconscionability, Williams must demonstrate that there was an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Desiderio v. Nat'l Assoc. of Securities Dealers,* 191 F.3d 198, 207 (2d Cir. 1999).  Williams must prove that "the contract was both procedurally and substantively unconscionable when made."  *McNally Wellman Co. v. New York State Elec. & Gas Corp.,* 63 F.3d 1188, 1198 (2d Cir. 1995)(quoting *Gillman v. Chase Manhattan Bank,* 537 N.Y.S.2d 787, 791 (1988)).

A contract is procedurally unconscionable when the "process is tainted by fraud or misrepresentation and can be demonstrated through a showing of, among other things, high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties."  *M&T Mortgage Corp. v. Miller,* 323 F. Supp. 2d 405, 413 (E.D.N.Y. 2004)(citations and internal quotation marks omitted).  In this case, Williams has alleged that the defendants, experienced mortgage lenders, pressured her to sign the documents without counsel present, provided her with inadequate, conflicting and misleading information about the loan agreement and took advantage of the fear of losing her home as well as her lack of understanding of the agreement and its terms.  Compl. at 26-27.   She has sufficiently alleged procedural unconscionability.

20

Williams has also alleged substantive unconscionability.  Although conceding that her monthly payments and the interest rate were lowered by the WSMB loan, Williams alleges that the loan agreement was still unreasonably favorable to the defendants because they knew Williams could not afford the terms of the agreement.  For the purposes of this motion to dismiss, Williams sufficiently states a claim for substantive unconscionability.  Accordingly, the defendants' motion to dismiss Williams's claim for unconscionability is denied.

I.       *Rule 19 Joinder*

As DLJ has not yet been determined to be a holder in due course and there are still substantive claims validly asserted against DLJ, I need not address the argument that DLJ was improperly joined as a party pursuant to Fed. R. Civ. P. 19.

CONCLUSION

For the reasons stated above, the defendants' motions to dismiss are granted in part and denied in part.  I grant Williams's request for leave to amend her complaint as to certain of her claims.  Williams must file her amended complaint on or before December 2, 2009.

So ordered.

John Gleeson, U.S.D.J.

Dated:  November 18, 2009
        Brooklyn, New York