UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

ALAVITA WILLIAMS, individually and as alleged sole
managing member of 113-38 Springfield Blvd., LLC,

                        Plaintiff,

                 - against -

ARIES FINANCIAL, LLC, WALL STREET MORTGAGE
BANKERS LTD., INDIGO MANAGEMENT, BERKSHIRE
FINANCIAL GROUP, INC., ALBERT O. LONDON,
DOUGLAS KAHAN, DAVID APPLEMAN, RONNIE
EBRANI, AND DLJ MORTGAGE CAPITAL, INC,

                        Defendants.

-------------------------------------------------------------------------x

Index No. 09-CV-1816
(JG)(RML)

**FIRST AMENDED
VERIFIED
COMPLAINT**

JURY TRIAL DEMANDED

     ALAVITA WILLIAMS, by and through her attorneys, THE LEGAL AID SOCIETY,

and co-counsel, FITZPATRICK, CELLA, HARPER & SCINTO, as and for her First Amended

Complaint, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     This action arises out of a step transaction involving two fraudulent mortgage refinance

     transactions and deed transfers which occurred less than a year from each other for the

     sole purpose of skimming excessive amounts of equity from Plaintiff Alavita Williams'

     home, with little benefit to her. In May 2006, Defendants intentionally and knowingly

     induced the Plaintiff, Alavita Williams, to refinance her mortgage at a highly inflated

     loan amount with grossly unaffordable terms in the name of 113-38 Springfield Blvd.,

     LLC, a fictitious LLC created for the purpose of this loan transaction and whose sole

     manager was Ms. Williams, unbeknownst to her. The Defendants further deceived

     Plaintiff into taking out a subordinate loan in the name of the sham LLC, although she

     was never told the existence and purpose of the loan. In March 2007, the Defendants

     again tricked Ms. Williams into refinancing the property in her own name at even a

higher loan amount, skimming even more equity out of her home with little benefit to her.

2. Defendants used a step transaction in order to perpetuate what is commonly known as an equity stripping and refinancing scheme against Ms. Williams. In this type of fraudulent scheme, lenders, mortgage brokers, and other parties collude together to prey on desperate homeowners whose mortgages are in default or whose homes are already in foreclosure, and burden them with grossly inflated mortgages. These inflated mortgages would include excessive and unnecessary fees and costs with little or no benefit to the borrowers, with the likely end result of the owners losing their homes and losing even more money and/or equity in their homes.

3. Here, Defendants specifically targeted Ms. Williams and deceived her into two fraudulent refinance mortgage transactions within a year of each other, which intentionally and unnecessarily stripped over $85,000 of equity in her home and resulted in grossly unaffordable mortgages.

4. Plaintiff seeks relief against Defendants based on violations of the Federal Truth in Lending Act, the Federal Real Estate Settlement Procedures Act, the Federal Fair Housing Act, the Federal Civil Rights Act, the New York Deceptive Practices Act, the New York State Anti-Predatory Lending Law, and the common law doctrines of fraud, conspiracy to commit fraud and unconscionability.

5. This action further seeks to set aside two deeds as null and void, the first deed dated May 2, 2006 (the "2006 deed"), which purportedly transferred title and ownership of a certain parcel of real property known and designated as and by the street address 113-38 Springfield Blvd., Queens Village, New York 11429 from Ms. Williams to 113-38 Springfield Blvd., LLC, a fictitious corporation, and a second deed dated March 21, 2007

2

(the "2007 deed"), which allegedly transferred title and ownership of the property from the sham LLC corporation back to Ms. Williams.

6.      In the alternative, if this Court does not find the deeds to be void, this action seeks a declaration that the 2006 deed and corresponding mortgages be equitable mortgages, and thus subject to all relevant claims under federal and state consumer protection laws.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

8.      This Court has supplemental jurisdiction over plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the subject property is located in the Eastern District of New York and a substantial portion of the events giving rise to this complaint occurred within the Eastern District of New York.

## PARTIES

10.     Plaintiff Alavita Williams is a 48-year-old mother, who lives with her 11-year-old daughter. Ms. Williams purchased the subject property located at 113-38 Springfield Blvd., Queens Village, New York, New York 11429, County of Queens, Block # 11134, Lot # 44, in July 2001.

11.     Defendant Aries Financial, LLC ("Aries Financial") is a corporation registered with the State of Alaska, whose registered office is located at 9360 Glacier Hwy Ste 202, Juneau, AK, 99801 and whose principal place of business is located at 2901 Clint Road, Boca Raton, Florida 33496. Aries Financial was the lender for the senior loan in the May 2, 2006 mortgage refinance transaction with Plaintiff ("Aries 2006 mortgage transaction").

Upon information and belief, Aries Financial regularly engaged in making mortgage loans in New York State and has entered into over forty mortgage transactions in the past five years.  Aries Financial, upon information and belief, is not registered with the NYS Department of State and has failed to obtain a certification from the NYS Department of State to do business in New York State.  Furthermore, upon information and belief, Aries Financial has not obtained approval from the New York State Banking Department to use the word "Financial" in its name.

12.     Defendant Wall Street Mortgage Bankers Ltd. ("Wall Street Mortgage") is a corporation registered with the State of New York, whose registered office is located at 1111 Marcus Ave., 3rd Floor, Lake Success, NY, 11042.  Wall Street Mortgage was the lender in the March 21, 2007 mortgage refinance transaction with Plaintiff ("Wall Street 2007 mortgage transaction").

13.     Defendant Indigo Management is a corporation registered with the State of New York, whose registered office is located at 315 20th Street, Apt. 3A, Brooklyn, New York, 11215.  Indigo Management was the lender for the subordinate mortgage in the May 2, 2006 mortgage refinance transaction with Plaintiff ("Indigo 2006 mortgage transaction"). According to NYS Department of State, Defendant David Appleman is registered as the Chairman/CEO of Indigo Management.

14.     Defendant Berkshire Financial Group, Inc. ("Berkshire") is a corporation registered with the State of New York, whose registered office is located at 585 North Gannon Ave., Staten Island, New York, 10314.  Berkshire was the mortgage broker company in the Aries 2006 mortgage transaction and, upon information and belief, in the Wall Street 2007 mortgage transaction.

15.     Defendant Albert O. London is a managing member of Aries Financial and represented

4

Aries Financial in the Aries 2006 mortgage transaction.

16.     Defendant Douglas Kahan is an attorney admitted in the State of New York, who
        maintains an office at Kahan & Kahan, 225 Broadway, Room 715, New York, New
        York, 10007. Mr. Kahan was the settlement agent for the Aries 2006 mortgage
        transaction. As the agent of Aries Financial, he signed the Articles of Incorporation for
        113-38 Springfield Blvd., LLC, a sham corporation that created on the same day as the
        Aries 2006 mortgage transaction. He listed the address of his firm, Kahan & Kahan, as
        the "DOS Process" address for 113-38 Springfield Blvd., LLC with the NYS Department
        of State.

17.     Defendant David Appleman is both the Chairman/CEO of Indigo Management and an
        employee of Wall Street Mortgage Bankers, Ltd. Upon information and belief, Mr.
        Appleman was previously employed by Berkshire as a loan officer/mortgage broker and
        was one of the mortgage brokers in the Aries 2006 mortgage transaction and, in that
        capacity, also acted as the lender's agent. Furthermore, Mr. Appleman signed on behalf
        of Indigo Management in the Indigo 2006 mortgage transaction. Finally, Mr. Appleman
        was the agent of Wall Street Mortgage in the 2007 Wall Street mortgage transaction.

18.     Defendant Ronnie Ebrani is a loan officer/mortgage broker with Berkshire and was one
        of the mortgage brokers in both the Aries 2006 mortgage and 2007 Wall Street mortgage
        transactions and also acted as the lenders' agent in both transactions.

19.     Defendant DLJ Mortgage Capital, Inc. ("DLJ Mortgage") is a residential mortgage lender
        organized under the laws of the United States of America and authorized to do business
        in the State of New York, with a business address at 11 Madison Avenue, New York,
        New York, 10010. Upon information and belief, DLJ Mortgage is the assignee and/or
        owner of the mortgage and note at issue in this case.

## FACTS COMMON TO ALL CLAIMS

20.     Plaintiff Alavita Williams is a 48 year-old African-American woman, who currently lives
        with her 11-year-old daughter.

21.     Ms. Williams resides in the property located at 113-38 Springfield Blvd., Queens Village,
        New York, New York 11429, County of Queens, Block # 11134, Lot # 44 (the "subject
        property").

22.     Ms. Williams purchased the subject property in July 2001.

23.     Prior to the purchase of the subject property, Ms. Williams never purchased a home, and
        she had no prior experience with financing property.

24.     In or around March 2001, Ms. Williams was taking care of her boyfriend, who was
        disabled at the time, and her then 3-year-old daughter.  She was looking to purchase a
        one-family house in order to provide a stable home for all of them.

25.     During that time, Ms. Williams worked as a corrections officer with the New York City
        Department of Corrections.

26.     As a public civil servant, Ms. Williams qualified and applied for the Good Neighbor Next
        Door (GNND) Sales Program through the U.S. Department of Housing and Urban
        Development ("HUD"), where eligible law enforcement officers, teachers, and
        firefighters/EMTS would be able to bid on and purchase "as-is" HUD owned single
        family homes at a 50% discount.

27.     At the end of March 2001, Ms. Williams was interested in purchasing the subject
        property and, on March 27, 2001, she successfully bid on the home.

28.     On March 29, 2001, Ms. Williams entered into a Sales Contract for the purchase price of
        $140,000, which was then discounted by 50% according to the GNND Sales Program.

29.     Due to the substantial repairs that needed to be done on the home, Ms. Williams qualified

                                                6

for the FHA 203(k) mortgage program that helps homebuyers buy a home and obtain enough money to rehabilitate or repair the home. The cost of the repairs and the mortgage are combined into a single monthly payment.

30. As a result, Ms. Williams obtained a mortgage loan with United Mortgage Corp. for $158,500 at a 30-year fixed rate of 8% on July 19, 2001.

31. The $158,500 mortgage was recorded on the Automated City Register Information System (New York City Department of Finance) ("ACRIS") on August 16, 2001.

32. On July 19, 2001, United Mortgage Corp. assigned the $158,500 mortgage loan to Washington Mutual Home Loans, Inc. ("Washington Mutual").

33. The assignment of mortgage to Washington Mutual was recorded on ACRIS on August 16, 2001.

34. Due to the substantial construction work that needed to be done on the home, Ms. Williams was unable to move into the property until March 2002.

35. Ms. Williams was not required to make any mortgage payments until the repairs to the home were completed. However, due to continuous pressure from WaMu to start making her mortgage payments, she certified that construction costs on the home was completed on June 26, 2002, although there were still additional repairs that needed to be done on the home.

36. In 2003, Ms. Williams was sued in Civil Court, County of Queens, Index No. 08735/2003, for purported unpaid repair costs to the home.

37. Although she ultimately prevailed in the litigation, Ms. Williams incurred substantial litigation costs.

38. Furthermore, Ms. Williams had to pay for additional repairs to the home out-of-pocket, which included, but was not limited to plumbing problems, electrical deficiencies,

removal of debris and feces in the attic, window replacement, water meter installation, and screen door replacement.

39.   Therefore, Ms. Williams started falling behind on her mortgage payments starting in or around April 2004.

40.   In or around September 2004, Washington Mutual initiated a foreclosure action against Ms. Williams in Supreme Court, Queens County, Index No. 20599/2004.

41.   In or around February 2005, Defendant David Appleman contacted Ms. Williams by telephone.

42.   During that time, Mr. Appleman was employed as a loan officer/mortgage broker for Defendant Berkshire, who was the mortgage broker company in the Aries 2006 mortgage transaction and, upon information and belief, in the Wall Street 2007 mortgage transaction.

43.   Mr. Appleman introduced himself to Ms. Williams and said that he was a mortgage broker/loan officer for Berkshire.

44.   Mr. Appleman further stated that he could help Ms. Williams avoid the foreclosure of her home by refinancing her mortgage.

45.   A few days later, Mr. Appleman visited Ms. Williams' home and persuaded her to agree to an adjustable rate refinance loan for $189,750 with Berkshire.

46.   On or around March 11, 2005, Ms. Williams received the Good Faith Estimate and Truth in Lending Statement.

47.   However, in late March 2005, Mr. Appleman called Ms. Williams and told her that he was unable to help her refinance her mortgage loan because he did not have sufficient capital to finalize the loan transaction.

48.   Approximately one year later, in or around late April 2006, Defendant Ronnie Ebrani

contacted Ms. Williams.

49.   At the time, Mr. Ebrani worked with Mr. Appleman as a loan officer/mortgage broker for Defendant Berkshire.

50.   Mr. Ebrani said to Ms. Williams that he would be able to prevent the foreclosure of her home by arranging a refinance of her mortgage loan.

51.   A couple of days later, Mr. Ebrani visited Ms. Williams at her home.

52.   Mr. Ebrani convinced Ms. Williams that she had no alternative but to accept his services to refinance her mortgage in order to avoid the imminent loss of her home.

53.   Mr. Ebrani further told Ms. Williams that she would need to refinance her mortgage again in one year, and he assured her that it was necessary and customary to do a second refinance in these types of transactions.

54.   Mr. Ebrani further dissuaded Ms. Williams from retaining her own attorney to represent her, stating that he would take care of everything and that she would be given a "fair and affordable" loan.

55.   Approximately a week later, Mr. Ebrani told Ms. Williams that she would be refinancing her loan with Defendant Aries Financial.

56.   Mr. Ebrani told Ms. Williams that he would arrange for a closing date immediately.

57.   Aries Financial did not provide the Truth-in-Lending Act ("TILA") pre-disclosures prior to the consummation of the loan nor the Good Faith Estimate ("GFE") within 3 days of the loan application to Ms. Williams.

58.   The closing took place at Defendant Berkshire's offices located at 1140 Bay Street, Staten Island, New York on May 2, 2006.

59.   On May 2, 2006, Ms. Williams met Mr. Ebrani at Berkshire's Staten Island offices for the closing.

9

60.   The parties who attended the closing included, but were not limited to the following parties:

a.   Ronnie Ebrani, one of the mortgage brokers employed by Berkshire and the lender's agent;

b.   David Appleman, representative and Chairman/CEO of Indigo Management and also, upon information and belief, one of the mortgage brokers employed by Berkshire and the lender's agent;

c.   Albert O. London, representative and managing member of Aries Financial; and

d.   Douglas Kahan, settlement agent and lender's agent.

61.   At the closing, Ms. Williams was assured again by Mr. Ebrani that she did not need an attorney to represent her at the closing because he would act in her best interests.

62.   Mr. Ebrani instructed Ms. Williams to sign many loan documents.

63.   However, Mr. Ebrani rushed Ms. Williams through the paperwork so that she did not have the opportunity to read any of the loan terms.

64.   Furthermore, Mr. Ebrani did not explain the significance or terms of any of the loan documents that Ms. Williams was signing.

65.   Unbeknownst to her, Ms. Williams signed documents forming a Limited Liability Company in the property's address – 113-38 Springfield Blvd., LLC – of which she was the sole managing member.

66.   Mr. Kahan, the settlement agent working on behalf of the lender, prepared the articles of organization for 113-38 Springfield Blvd., LLC.

67.   According to the NYS Department of State, the address for service of process for 113-38 Springfield Blvd., LLC is Kahan & Kahan, 225 Broadway, Suite 715, New York, New York 10007.

68.  Mr. Kahan is one of the law firm partners of Kahan & Kahan.

69.  In addition, Ms. Williams unwittingly signed a deed transferring title of the subject
     property to 113-38 Springfield Blvd., LLC.  There was no consideration for the deed
     transfer.

70.  The deed, dated May 2, 2006, was recorded on ACRIS on June 6, 2006, CRFN #
     2006000315400.

71.  Ms. Williams was not informed about the existence of 113-38 Springfield Blvd., LLC, of
     which she was the sole "managing member," nor was she aware that her home was
     owned by said LLC.

72.  Ms. Williams also unknowingly and unintentionally signed loan documents giving Aries
     Financial an approximate 7-year adjustable rate mortgage in the amount $250,800,
     starting at an initial 15% interest-only rate, which is well above the rate allowed under
     consumer protection laws, and a balloon payment of $250,800 due and payable at the end
     of the loan term.

73.  Without her knowledge and awareness, Ms. Williams signed purported waivers of
     numerous rights under consumer protection laws, including but not limited to:

     a.  A one-page document entitled "Mortgage Rider" which waives the borrower's
         right to bring a class action lawsuit against Aries Financial regarding the subject
         mortgage and "any potential disputed item concerning [the] mortgage and any
         agreements and documents relating hereto."

     b.  A four-page document also entitled "Mortgage Rider" which includes:

         i.  a waiver of right to a jury trial in "any action, proceeding or counterclaim
             brought by the mortgagee or the mortgagor against the other on any
             matters whatsoever arising out of or in any way connected with this

11

        mortgage or the debt or liabilities it secures;"

    ii.     a waiver of the mortgagor's set-offs or counterclaim of any nature or description; and

    iii.    another wavier of the mortgagor's right to bring class action suit against Aries Financial.

    c.     A mandatory arbitration rider requiring, *inter alia*, a waiver of Ms. Williams' right to a jury trial in the event that the arbitration agreement is declared unenforceable.

74.    Unbeknownst to her, Ms. Williams signed many of the loan documents individually and as sole managing member of 113-38 Springfield Blvd., LLC.

75.    However, the mortgage document was signed only individually by Ms. Williams, not as sole managing member of 113-38 Springfield Blvd., LLC, although title to the property was purportedly transferred to the LLC.

76.    The $250,800 mortgage with Aries Financial, dated May 2, 2006, was on ACRIS on June 6, 2006, CFRN # 2006000315394.

77.    The initial monthly mortgage payments on the Aries 2006 mortgage transaction were $3,135, which included taxes and insurance.

78.    At the closing, Mr. Ebrani told Ms. Williams that she didn't need to make any mortgage payments for a year, because those payments would be paid by monies held in escrow.

79.    Furthermore, Mr. Ebrani reminded Ms. Williams that she would need to refinance in a year, because "that's the way it is."

80.    Aries Financial placed $37,620 of the mortgage proceeds into an escrow account held by Wachovia Bank.

81.    Defendant Aries Financial paid itself interest-only payments of $3,135 from the escrow

account until April 2007.

82.     Upon information and belief, Aries Financial retained the remainder of the proceeds - $3,135 - that were held in the escrow account after the Aries mortgage was paid off by the 2007 Wall Street mortgage transaction, for its own benefit and without any authorization from Ms. Williams.

83.     In addition, without her knowledge, Ms. Williams signed another mortgage document that took out a subordinate mortgage of $6,160.12 with a 15% annual interest rate to be paid in one year to Indigo Management. Therefore, total payment due on the mortgage was stated to be $6,900, due and payable on May 2, 2007.

84.     Defendant David Appleman, who was, upon information and belief, one of the mortgage brokers in the Aries 2006 loan transaction and the lender's agent, was also the Chairman/CEO of Indigo Management.

85.     Mr. Appleman signed on behalf of Indigo Management in the 2006 Indigo Management mortgage transaction.

86.     The subordinate mortgage with Indigo Management, dated May 2, 2006, was recorded on ACRIS on June 6, 2006, CFRN # 2006000315395.

87.     The purpose of the $6,160.12 loan with Indigo Management was never explained to Ms. Williams.

88.     As a result of the 2006 refinance transaction, over $50,000 of equity was skimmed from the subject property and Ms. Williams became burdened with a high-cost loan that was not only unaffordable, but contravened standard business practice.

89.     Upon information and belief, Defendants Aries Financial, Indigo Management, and Berkshire, through and by their representatives and/or principals, Albert O. London, David Appleman, Ronnie Ebrani, and Douglas Kahan, colluded to transfer the ownership

13

of Ms. Williams' property into a corporation and take out mortgages in the name of the corporation in order to shield themselves from Federal and New York State consumer protection laws, including but not limited to the Federal Truth in Lending Act, the Real Estate Settlement Procedures Act, the Federal Fair Housing Act, the Deceptive Practices Act, and the New York State Anti-Predatory Lending Law.

90. According to ACRIS, Defendant Aries Financial engaged in more than forty mortgage transactions in New York City over the past year, all in which the property was deeded from the owner to an LLC that bore the name of the address of that property and listed the owner as the sole managing member.

91. In most or all of these cases, the LLC took out a mortgage with Aries Financial with interest rates ranging from 14% to 16%.

92. Upon information and belief, it is Aries Financial's regular loan practice to require that the first year's worth of monthly interest-only mortgage payments due under its loans be taken out of the loan proceeds and placed in a third party escrow account which makes payments to Aries Financial on a monthly basis.

93. Furthermore, upon information and belief, Aries Financial's business plan requires that borrowers refinance its mortgages in one year as part of its loan transaction.

94. In October 2006, Ms. Williams discovered the roof of her home caved in.

95. Shortly thereafter, Ms. Williams contacted Mr. Ebrani, who stated that she would need to fix the roof before she could refinance her mortgage again.

96. Ms. Williams paid out-of-pocket to repair the roof of her home.

97. In early 2007, Defendant Ronnie Ebrani (one of the mortgage brokers in the Aries 2006 mortgage transaction and now a mortgage broker in the Wall Street 2007 mortgage transaction and acting as the lenders' agents in both transactions) contacted Ms. Williams

14

again to arrange a subsequent refinance of her loan.

98.     As aforementioned above, Mr. Ebrani indicated to Ms. Williams that it was necessary and customary to refinance her mortgage in one year, although such subsequent refinances are not necessary or customary nor is it normally beneficial to the borrower.

99.     Ms. Williams advised Mr. Ebrani that she had retired from the NYC Department of Corrections in April 2007 and that she had no source of income at the time.

100.    However, Mr. Ebrani assured Ms. Williams that her lack of income would not be a problem.

101.    Furthermore, Mr. Ebrani stated that he found a lender, Wall Street Mortgage, to refinance her mortgage.

102.    At the time, Defendant David Appleman (who was the representative and Chairman/CEO of Indigo Management in the Indigo 2006 mortgage transaction and, upon information and belief, was also one of the brokers for the 2006 Aries mortgage transaction and acted as Aries Financial's agent) worked for Wall Street Mortgage and represented Wall Street Mortgage at the closing.

103.    Similar to the Aries 2006 mortgage transaction, Mr. Ebrani again reassured Ms. Williams that she would not need an attorney to represent her at the closing as he would arrange everything.

104.    Wall Street failed to provide the TILA pre-disclosures prior to the consummation of the loan and the GFE within 3 days of the loan application to Ms. Williams.

105.    The closing took place on March 21, 2007, *less than a year after the 2006 mortgage transaction*, at the offices of Carone & Associates, PLLC, 2132 Flatbush Ave., 2nd Floor, Brooklyn, New York 11234.

106.    Carone & Associates, PLLC was the settlement agent for the 2007 Wall Street mortgage

15

transaction.

107.    On March 21, 2007, Ms. Williams attended the closing at the offices of Carone & Associates in Brooklyn, New York.

108.    The closing parties included, but were not limited to David Appleman, now a representative of Wall Street Mortgage,  and another individual that was purportedly a Berkshire representative.

109.    Ms. Williams was again rushed through signing the loan documents without having the opportunity to read them, and the loan terms were never explained to Ms. Williams.

110.    Unbeknownst to her, Williams signed *two* different sets of the following documents: the Uniform Residential Loan Application, the GFE, the Mortgage, the Itemization of Amount Financed ("IAF"), and the TILA Disclosure Statement.

111.    Both sets of the Uniform Residential Loan Application are dated February 26, 2007.

112.    Both sets of the GFE are dated March 21, 2007 (the closing date).

113.    Both sets of the Mortgage document are dated March 21, 2007 (the closing date).

114.    Both sets of the IAF are dated March 21, 2007 (the closing date).

115.    Both sets of the TILA Disclosure Statement are dated March 21, 2007 (the closing date).

116.    One set of documents disclosed the loan amount as $275,000.

117.    Another set of documents disclosed the loan amount to be $282,750.

118.    The mortgage, dated March 21, 2007, was recorded on ACRIS on April 17, 2007, CFRN # 2007000197703.  The mortgage document discloses the amount of the loan to be $282,750.

119.    The two sets of TILA Disclosure Statement disclosed different APR, finance charges, and amount financed.

120.    The GFE associated with the HUD-1 Settlement Statement disclosed different amounts

16

for settlement costs, although both documents were dated the same day, March 21, 2007.

121. Therefore, the documents provided by Wall Street Mortgage Ltd. at the closing failed to clearly and conspicuously disclose the amount, terms, and costs of the loan.

122. Furthermore, according to the HUD-1 Settlement Statement, a disbursement payment of $6,900 was made to Indigo Management to satisfy the Indigo 2006 mortgage.

123. Mr. Appleman is the Chairman/CEO of Indigo Management.

124. Therefore, Mr. Appleman, who was the representative of Wall Street Mortgage at the closing, also benefited an additional $6,900 from the loan proceeds in the Wall Street 2007 mortgage transaction.

125. Ms. Williams was unaware that Mr. Appleman was receiving $6,900 from the loan proceeds, as she did not know that she took out a subordinate mortgage with Indigo Management during the 2006 refinance transaction.

126. Finally, Ms. Williams unwittingly signed a Deed document transferring title to the property from 113-38 Springfield Ave., LLC back to her own name.

127. The deed, dated March 21, 2007, was recorded on ACRIS on April 17, 2007, CFRN # 2007000197702.

128. As a result of the 2007 Wall Street mortgage transaction, Ms. Williams obtained a higher adjustable rate mortgage with Wall Street Mortgage for $282,750 with an introductory interest rate of 10.5%.

129. The initial monthly payments were $2,895.63, which did not include taxes and insurance.

130. Therefore, the total initial monthly payments, including taxes and insurance, were $2,895.63.

131. Wall Street Mortgage knew or should have known that Ms. Williams could not afford to pay monthly mortgage payments of $2,895.63, as Ms. Williams did not have any sources

17

of income at the time of the refinance.

132.   Therefore, upon information and belief, the purpose of the Wall Street 2007 mortgage transaction was to skim more equity from Ms. Williams' home for its own benefit, with the end result being foreclosure of Ms. Williams' home.

133.   Upon information and belief, Wall Street Mortgage violated its own underwriting guidelines in refinancing a loan that it knew or should have known to be unaffordable to the borrower in order to collude with the other Defendants to skim more equity from the home.

134.   After the closing of the 2007 Wall Street mortgage transaction, Ms. Williams made three monthly mortgage payments.

135.   However, Ms. Williams fell behind on her mortgage due to the high monthly payments and additional repairs that needed to be done on the home after severe flooding.

136.   Upon information and belief, Defendants acted in concert or in participation with each other, or were joint participants and collaborators, in defrauding Ms. Williams into refinancing her home twice, skimming more than $85,000 of equity from the subject property.

137.   Upon information and belief, each Defendant was a co-conspirator and/or joint venturer and acted within the scope of said conspiracy or joint venture and with the permission and consent of each of the other Defendants.

## FIRST CAUSE OF ACTION

**Against Aries Financial, Albert O. London, Douglas Kahan, Indigo Management, and David Appleman**

### NEW YORK REAL PROPERTY LAW § 320

138.   Plaintiff repeats and realleges paragraphs 1 through 137 as though fully set forth therein.

18

139.   The 2006 deed transfer from Plaintiff to 113-38 Springfield Blvd., LLC, although a conveyance of property on its terms, must be considered mortgages as a matter of law. Under New York State common law and New York Real Property Law § 320, "[a] deed conveying real property, which by any other instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms must be considered as a mortgage."

140.   The 2006 deed transfer from Plaintiff to 113-38 Springfield Blvd., LLC was never meant to transfer any type of ownership of the property.  113-38 Springfield Blvd., LLC is a single member liability company and Ms. Williams is the sole managing member of the company.  Ms. Williams has the same ownership interest in the property whether it is owned by her or a single member Limited Liability Company.  Upon information and belief, Defendants orchestrated the formation of the corporation and the transfer of the deed from Ms. Williams to that corporation so that they could give Ms. Williams mortgages with more onerous and ambiguous terms than are permitted by Federal and New York State consumer protection laws, which would have applied if Ms. Williams took out the mortgages as a natural person.

141.   Defendant Douglas Kahan filed the articles of organization for 113-38 Springfield Blvd., LLC prior to ever meeting or speaking with Ms. Williams.  The articles of organization for 113-38 Springfield Blvd., LLC were filed by Mr. Kahan on April 27, 2006 with the DOS Process address listed as Mr. Kahan's law firm, Kahan & Kahan.  Ms. Williams first met Mr. Kahan on the day of the closing on May 2, 2006, where she unwittingly signed many documents, including the Operating Agreement and Member Resolution for 113-38 Springfield Blvd., LLC.

142.   Ms. Williams was not aware of the existence of 113-38 Springfield Blvd., LLC, and she

did not know that she was the sole managing member of the entity. She was under the belief that she was entering a consumer loan transaction only.

143.    Upon information and belief, 113-38 Springfield Blvd., LLC has been inactive aside from the May 2, 2006 deed transfer to the LLC and May 2, 2006 mortgage transactions with Aries Financial, LLC and Indigo Management, and the March 21, 2007 deed transfer from the LLC back to Ms. Williams.

144.    To establish that a deed conveyance was meant as a security, examination also may be made of oral testimony bearing on the intent of the parties and consideration of the surrounding circumstances and acts of the parties. Defendants' acts and statements evinced an intent to take out a mortgage with Plaintiff and to use a dummy LLC to shield them against consumer protection laws. As Plaintiff's property is her sole asset, she clearly derived no protection or benefit from transferring ownership of her property to a corporation. The only effect of putting it into the name of an inoperative corporation was to deprive her of consumer protection claims and enable the mortgagees to underhandedly acquire more money from Ms. Williams.

145.    Plaintiff therefore requests that the May 2, 2006 deed transfer from Plaintiff to 113-38 Springfield Blvd., LLC and the corresponding mortgages be considered equitable mortgages, entitling Plaintiff to all the rights and remedies afforded to consumers under state and federal laws.

## SECOND CAUSE OF ACTION

**Against Aries Financial, Albert O. London, Douglas Kahan, Indigo Management, and David Appleman**

### EQUITABLE ESTOPPEL

146.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through

145 above as if fully set forth therein.

147.   It is without doubt that Ms. Williams had no intention to form a corporation and act as the

sole managing agent.  Furthermore, taking out a mortgage in the name of the corporation

provided no tangible benefit to Ms. Williams, as it simply allowed for more abusive loan

terms and strips her of rights afforded by Federal and New York State consumer

protection laws.

148.   Accordingly, Defendants should be estopped from claiming that the May 2, 2006

mortgages were made between them and a corporation so that they are subject to state

and federal consumer protection laws.

### THIRD CAUSE OF ACTION

**Against Aries Financial, LLC, Albert O. London, and Douglas Kahan**

**TRUTH IN LENDING ACT, 15 U.S.C. §1601 *et seq.***

149.   Plaintiff repeats and realleges paragraphs 1 through 148 as though fully set forth herein.

150.   At the time of the May 2, 2006 Aries loan transaction, Defendant Aries Financial, LLC,

through its principal Albert O. London, and, upon information and belief, Douglas Kahan

acted as creditors who regularly engaged in the making of the mortgage loans payable by

agreement in more than four installments or for which the payment of a finance charge is

or may be required, whether in connection with loans, sales of property or services, or

otherwise.  Accordingly, Defendants are subject to the Truth in Lending Act ("TILA"),

15 U.S.C. § 1601 *et seq.*, and its implementing regulations, Federal Reserve Board

Regulation Z, 12 C.F.R. § 226.

151.   As a result of the May 2, 2006 Aries loan transaction, Defendants acquired an interest in

Plaintiff's home that secures payment or performance of that obligation.

152.   Upon information and belief, in the course of the May 2, 2006 consumer credit

transaction described above, Defendants violated the disclosure and rescission requirements of TILA and Regulation Z in the following and other respects:

a.  By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).

b.  By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).

c.  By failing to disclose properly and accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b);

d.  By failing to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C. § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) & 226.4.

e.  By failing to provide two copies of the notice of the right to rescind and an accurate date for the expiration of the rescission period in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b).

153.  The above violations of the Truth in Lending Act give Plaintiff an extended right to rescind the loan held by Defendants pursuant to 15 U.S.C. §§ 1635 & 1651(d)(1) and 12 C.F.R. § 226.23.

154.  In addition, Defendants are liable to Plaintiff for actual and statutory damages; costs and disbursements; and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Against Indigo Management and David Appleman

### TRUTH IN LENDING ACT, 15 U.S.C. §1601 *et seq.*

155.  Plaintiff repeats and realleges paragraphs 1 through 154 as though fully set forth herein.

156.  At the time of the May 2, 2006 Indigo Management loan transaction, Defendant Indigo

Management, through its owner/principal David Appleman, acted as creditors who regularly engaged in the making of the mortgage loans payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise. Accordingly, Defendants are subject to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its implementing regulations, Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

157. As a result of the May 2, 2006 Indigo Management loan transaction, Defendants acquired an interest in Plaintiff's home that secures payment or performance of that obligation.

158. Upon information and belief, in the course of the May 2, 2006 consumer credit transaction described above, Defendants violated the disclosure and rescission requirements of TILA and Regulation Z in the following and other respects:

   a.   By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).

   b.   By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).

   c.   By failing to disclose properly and accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b);

   d.   By failing to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C. § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) & 226.4.

   e.   By failing to provide two copies of the notice of the right to rescind and an accurate date for the expiration of the rescission period in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b).

159.   The above violations of the Truth in Lending Act give Plaintiff an extended right to
       rescind the loan held by Defendants pursuant to 15 U.S.C. §§ 1635 & 1651(d)(1) and 12
       C.F.R. § 226.23.

160.   In addition, Defendants are liable to Plaintiff for actual and statutory damages; costs and
       disbursements; and attorneys' fees.

### FIFTH CAUSE OF ACTION

**Against Wall Street Mortgage Bankers Ltd. and David Appleman**

**TRUTH IN LENDING ACT, 15 U.S.C. §1601 *et seq.***

161.   Plaintiff repeats and realleges paragraphs 1 through 160 as though fully set forth herein.

162.   At the time of the March 21, 2007 Wall Street Mortgage loan transaction, Defendant
       Wall Street Mortgage, through its owner David Appleman, acted as a creditor who
       regularly engaged in the making of the mortgage loans payable by agreement in more
       than four installments or for which the payment of a finance charge is or may be required,
       whether in connection with loans, sales of property or services, or otherwise.
       Accordingly, Defendants are subject to the Truth in Lending Act ("TILA"), 15 U.S.C. §
       1601 *et seq.*, and its implementing regulations, Federal Reserve Board Regulation Z, 12
       C.F.R. § 226.

163.   As a result of the March 21, 2007 Wall Street Mortgage transaction, Defendants acquired
       an interest in Plaintiff's home that secures payment or performance of that obligation.

164.   Upon information and belief, in the course of the March 21, 2007 consumer credit
       transaction described above, Defendants violated the disclosure and rescission
       requirements of TILA and Regulation Z in the following and other respects:

       a.     By failing to provide the required disclosures prior to the consummation of the
              transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).

24

     b.     By providing two different sets of required disclosures setting forth two different loan amounts and loan terms, thereby:

          (i)     failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).

          (ii)     failing to disclose clearly and conspicuously the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b);

     c.     By failing to provide two copies of the notice of the right to rescind and an accurate date for the expiration of the rescission period in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b).

165.     The above violations of the Truth in Lending Act give Plaintiff an extended right to rescind the loans held by Defendants pursuant to 15 U.S.C. §§ 1635 & 1651(d)(1) and 12 C.F.R. § 226.23.

166.     In addition, Defendants are liable to Plaintiff for actual damages; costs and disbursements; and attorneys' fees.

167.     DLJ Mortgage, as the supposed assignee and holder of the subject mortgage, is liable for all claims that the Plaintiff could assert against the originator of the mortgage.

**SIXTH CAUSE OF ACTION**

**Against Aries Financial, LLC, Albert O. London, and Douglas Kahan**

**FEDERAL FAIR HOUSING ACT, 42 U.S.C. § 3605**

168.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 167 above as if fully set forth herein.

169.     Defendants Aries Financial, LLC, through its principal Albert O. London, and Douglas Kahan discriminated against Ms. Williams the basis of her race in a residential real-estate transaction in violation of the Federal Fair Housing Act, 42 U.S.C. § 3605.

25

170. Defendants Aries Financial, LLC, through its principal Albert O. London, and Douglas Kahan targeted minority neighborhoods, particularly in Brooklyn and Queens, where they made substantial profits by deceiving minority homeowners into entering predatory mortgage transactions that stripped valuable equity from their homes and dispossessed them of all rights afforded by consumer protection laws.

171. These actions were taken deliberately and with discriminatory intent, and with reckless disregard for Ms. Williams' rights.

172. In addition, Defendants Aries Financial, LLC and Douglas Kahan engaged in a pattern of discriminatory practices related to residential real estate transactions that resulted in a disparate impact to the detriment of non-white homeowners in and around New York City.

173. As a proximate result of these discriminatory practices related to residential real estate transactions, Ms. Williams suffered economic loss, mental anguish, deprivation of civil rights, and the prospective loss of housing.

174. As a result of these discriminatory practices, this Court should declare null and void the subject deed dated May 2, 2006 and corresponding mortgages and enjoin Defendants from engaging in similar discriminatory acts and practices, pursuant to 42 U.S.C. § 3613(c). In addition, Defendants are liable for punitive damages, as well as costs and disbursements, pursuant to 42 U.S.C. § 3613(c) and (d).

### SEVENTH CAUSE OF ACTION

**Against Aries Financial, LLC, Albert O. London, and Douglas Kahan**

### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1981 AND 1982

175. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 174 above as if fully set forth herein.

26

176.   Defendants Aries Financial, LLC, through its principal Albert O. London, and Douglas

Kahan have targeted minority neighborhoods to seek out borrowers who will unwittingly

transfer their deeds to shell corporations and then take out mortgages on unreasonable

terms.  In the case of Ms. Williams, such actions were taken deliberately and with

discriminatory intent, and with reckless disregard for Ms. Williams' rights.

177.   These discriminatory acts and conduct denied Ms. Williams the same rights to make and

enforce contracts, and to enjoy the full and equal benefit of the laws, as are enjoyed by

white citizens of the United States, in violation of 42 U.S.C. § 1981.  Furthermore, such

acts and conduct denied Ms. Williams the same rights to inherit, purchase, lease, sell,

hold and convey real property, as are enjoyed by white citizens of the United States, in

violation of 42 U.S.C. § 1982.

178.   As a proximate result of these discriminatory actions, Ms. Williams has suffered

economic loss, mental anguish, deprivation of civil rights, and the prospective loss of

housing.

179.   As a result of these discriminatory practices, this Court should declare null and void the

subject deed dated May 2, 2006 and corresponding mortgages and enjoin Defendants

from engaging in similar discriminatory acts and practices.  In addition, Defendants are

liable for punitive damages, as well as costs and disbursements.

### EIGHTH CAUSE OF ACTION

**Against Aries Financial, LLC and Albert O. London**

## REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §§2601 *et seq.*

180.   Plaintiff repeats and realleges paragraphs 1 through 179 as though fully set forth herein.

181.   The mortgage transaction between Aries Financial, LLC and 113-38 Springfield Blvd.,

LLC, dated May 2, 2006, is a refinance loan secured by a one-family residential property,

the proceeds of which were used to pay off Plaintiffs' mortgage with United Mortgage
Corp.

182.    The mortgage transaction between Aries Financial, LLC and 113-38 Springfield Blvd.,
        LLC dated May 2, 2006 is a "federally related mortgage loan" as defined in 12 U.S.C. §
        2602(1), and therefore is subject to the Real Estate Settlement Procedures Act
        ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*

183.    Defendant Aries Financial, LLC, through its principal as Albert O. London, violated
        RESPA with respect to Plaintiff's loan transaction by giving a portion, split, or
        percentage of charges made or received for the rendering of a real estate settlement
        service in connection with a transaction involving a federally related mortgage loan other
        than for services actually performed, in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. §
        3500.14(c).

184.    Defendants Aries Financial, LLC and Albert O. London  are liable to plaintiff for actual
        damages, trebled under 12 U.S.C. § 2607(d)(2); costs and disbursements; and attorneys'
        fees.

## NINTH CAUSE OF ACTION

### Against Indigo Management and David Appleman

### REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §§2601 *et seq.*

185.    Plaintiff repeats and realleges paragraphs 1 through 184 as though fully set forth herein.

186.    The subordinate mortgage transaction between Indigo Management and 113-38
        Springfield Blvd., LLC dated May 2, 2006 is a "federally related mortgage loan" as
        defined in 12 U.S.C. § 2602(1), and therefore is subject to the Real Estate Settlement
        Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*

187.    Defendant Indigo Management, through its Chairman/CEO David Appleman, violated

RESPA with respect to Plaintiff's loan transaction by giving a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(c).

188.    Defendants Indigo Management and David Appleman are liable to plaintiff for actual damages, trebled under 12 U.S.C. § 2607(d)(2); costs and disbursements; and attorneys' fees.

## TENTH CAUSE OF ACTION

### FRAUD

### Against All Defendants

189.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 188 above as set fully therein.

190.    Defendants Aries Financial, Indigo Management, Berkshire (mortgage broker company for the Aries 2006 mortgage transaction and, upon information and belief, for the Wall Street 2007 mortgage transaction), Albert O. London (representative of Aries Financial in the Aries 2006 mortgage transaction), Ronnie Ebrani (mortgage broker and lenders' agent in both the Aries 2006 mortgage transaction and the Wall Street 2007 mortgage transaction), David Appleman (mortgage broker and lender's agent in the Aries 2006 mortgage transaction, representative of Indigo Management in the Indigo 2006 mortgage transaction, and representative of Wall Street in the Wall Street 2007 mortgage transaction), and Douglas Kahan (settlement agent and lender's agent in the Aries 2006 mortgage transaction) made the following misrepresentations and omissions of material facts to Ms. Williams with respect to the 2006 refinance transaction, including but not

29

limited to:

a.     In or around April 2006, Defendant Ronnie Ebrani dissuaded Ms. Williams from retaining counsel of her own choosing to represent her in the refinance transaction by misrepresenting to her that it was not necessary and that he would represent her best interests;

b.     In or around April 2006, Defendant Ronnie Ebrani misrepresented to Ms. Williams that it was customary and necessary to refinance the Aries 2006 mortgage in one year, although a subsequent refinance is neither customary nor necessary and would hold no benefit to Ms. Williams;

c.     At the closing, on May 2, 2006, Defendant Ronnie Ebrani rushed Ms. Williams to sign a series of loan documents without being able to examine the documents, including, but not limited to the mortgage, the note, the deed and various other closing documents, thereby concealing the mortgage terms;

d.     At the closing, on May 2, 2006, Defendants Aries Financial, Berkshire, and Indigo Management, through their representatives and/or principals, Albert O. London, Ronnie Ebrani, and David Appleman misrepresented to Ms. Williams that the subject mortgage was to be a consumer loan, not a loan to be taken out in the name of sham limited liability company created solely for the purpose of the subject mortgage transaction;

e.     At the closing, on May 2, 2006, Defendants Aries Financial, Berkshire, and Indigo Management, through their representatives and/or principals, Albert O. London, Ronnie Ebrani and David Appleman failed to disclose to Ms. Williams that, as part of the loan transaction, she would be required to transfer title to her home to a limited liability corporation (LLC) in the property's address, of which

she would the sole managing member, and that the mortgage would be in the name of the LLC;

f.      At the closing, on May 2, 2006, Defendant Douglas Kahan, the settlement agent, failed to disclose that he filed the Articles of Organization for the creation of the LLC and that he was the agent for service of process for the LLC;

g.      At the closing, on May 2, 2006, Defendants Aries Financial, Berkshire, and Indigo Management, through their representatives and/or principals, Albert O. London, Ronnie Ebrani, and David Appleman failed to disclose to Ms. Williams that she would be financing the creation of the LLC;

h.      At the closing, on May 2, 2006, Defendants Aries Financial, Berkshire, and Indigo Management, through their representatives and/or principals, Albert O. London, Ronnie Ebrani, and David Appleman failed to disclose to Ms. Williams that she would be taking out a subordinate loan of $6,160.12 with Indigo Management, with an annual interest rate of 15%, to paid in a year;

i.      At the closing, on May 2, 2006, Defendants Aries Financial, Berkshire, and Indigo Management, through their representatives and/or principals, Albert O. London, Ronnie Ebrani, and David Appleman failed to disclose the purpose of the 2006 Indigo mortgage;

j.      Defendants Indigo Management and David Appleman concealed the terms of the 2006 Indigo Management mortgage by failing to provide any pre-disclosures and disclosures as required under federal statutes and regulations prior to or at the closing;

k.      Defendant Aries Financial concealed the terms of the mortgage by failing to disclose prior to the closing the estimated settlement charges and financial terms

31

of the mortgage as required by and in violation of federal statutes and regulations;

l.      At the closing, on May 2, 2006, Defendant Aries Financial concealed the terms of the mortgage by failing to properly disclose the APR, the finance charge, the amount financed, and the settlement costs associated with the loan;

m.      At the closing, on May 2, 2006, Defendants Aries Financial, Berkshire, and Indigo Management, through their representatives and/or principals, Albert O. London, Ronnie Ebrani, and David Appleman misrepresented to Ms. Williams that Aries Financial would escrow payments for the year and that, at the end of the year, she would refinance; Ms. Williams was coerced into refinancing in less than a year, and was not given the remaining funds that were held in escrow.

191.    Defendants Wall Street Mortgage, Berkshire (mortgage broker company for the Aries 2006 mortgage transaction and, upon information and belief, for the Wall Street 2007 mortgage transaction), Ronnie Ebrani (mortgage broker and lenders' agent in both the Aries 2006 mortgage transaction and the Wall Street 2007 mortgage transaction), and David Appleman (mortgage broker and lender's agent in the Aries 2006 mortgage transaction, representative of Indigo Management in the Indigo 2006 mortgage transaction, and representative of Wall Street in the Wall Street 2007 mortgage transaction), made the following misrepresentations and omissions of material facts to Ms. Williams with respect to the Wall Street 2007 mortgage transaction, including but not limited to:

a.      In early 2007, Defendant Ronnie Ebrani misrepresented to Ms. Williams that she had to refinance her Aries 2006 mortgage, although it held no benefit to Ms. Williams to refinance her loan and she had no source of income at the time;

b.      Defendant Wall Street Mortgage knew or should have known that Ms. Williams

32

would be unable to sustain the monthly mortgage payments on the loan, as she had no sources of income at the time, and failed to disclose such information to Ms. Williams prior to or at the closing and further consummated the loan;

c.    In early 2007, Defendant Ronnie Ebrani dissuaded Ms. Williams from retaining counsel of her own choosing to represent her at the closing, misrepresenting to her that it was not necessary;

d.    At the closing, on March 21, 2007, Defendants Wall Street Mortgage, Berkshire, and David Appleman rushed Ms. Williams to sign a series of loan documents at the closing without being able to examine the documents, including, but not limited to the mortgage, the note, the deed and various other closing documents, thereby concealing the mortgage terms;

e.    At the closing, on March 21, 2007, Defendants Wall Street Mortgage, Berkshire, and David Appleman failed to disclose to Ms. Williams that title to her property was being transferred from the LLC back to her name and that she would paying the costs of recording the deed;

f.    At the closing, on March 21, 2007, Defendant David Appleman, who represented Wall Street in this refinance transaction and is the Chairman/CEO of Indigo Management, failed to disclose to Ms. Williams that he was being paid an additional $6,900 as a disbursement out of the loan proceeds to pay off the Indigo subordinate mortgage of the 2006 loan transaction;

g.    Defendant Wall Street Mortgage concealed the terms of the mortgage by failing to disclose prior to the closing the estimated settlement charges and financial terms of the mortgage as required by and in violation of federal statutes and regulations;

h.    At the closing, on March 21, 2007, Defendant Wall Street Mortgage concealed

the terms of the mortgage by providing two different sets of loan documents, which disclosed different loan amounts, loan terms, and settlement costs associated with the loan;

192. Defendants had a duty to disclose the material information specified in paragraphs 91 (subparts a—m) and 192 (subparts a—h), and failed to do so.

193. Defendants made these representations and omissions knowing that they were false and misleading at the time they were made.

194. Ms. Williams has a reasonable right to rely, and in fact relied, on Defendants' representations and omissions of material facts in agreeing to refinance her home, particularly in the light of the following circumstances:

   a.   Ms. Williams was specifically targeted by Defendants for their equity stripping and refinancing scheme, as she was in foreclosure proceedings and was desperate to save her home;

   b.   As Ms. Williams had never before purchased a home before the subject property and is unsophisticated in financial matters, she trusted Defendants to provide her a reasonable and affordable loan;

   c.   As Ms. Williams was dissuaded from retaining counsel in both transactions, she had no alternative but to rely on Defendants' misrepresentations/omissions of material fact.

195. As a result of said fraud, Ms. Williams suffered damages, including economic loss, mental anguish, deprivation of civil rights, and the prospective loss of housing.

196. Said fraud renders void and unenforceable the May 2, 2006 and March 21, 2007 mortgage/deed transactions.

197. Defendants are liable to Plaintiff for actual damages, punitive damages, costs and

34

disbursements, and attorneys' fees.

198.   DLJ Mortgage, as the supposed assignee and holder of the subject mortgage, is liable for all claims that the Plaintiff could assert against the originator of the mortgage.

## ELEVENTH CAUSE OF ACTION

### Against All Defendants

### CIVIL CONSPIRACY TO COMMIT FRAUD

199.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 198 above as set fully therein.

200.   Defendants knowingly and intentionally participated in the scheme by deceiving Plaintiff into entering into the May 2, 2006 and March 21, 2007 mortgage/deed transactions by making misrepresentations of material facts and/or failing to provide material information regarding the loans as alleged above.

201.   Plaintiff suffered serious injury as the proximate result of her reliance on Defendants' actions and misrepresentations.

202.   Said conspiracy renders void and unenforceable the May 2, 2006 and March 21, 2007 mortgage/deed transactions.

203.   Defendants are liable to Plaintiffs for actual damages, punitive damages, costs and disbursements, and attorneys' fees.

204.   DLJ Mortgage, as the supposed assignee and holder of the subject mortgage, is liable for all claims that the Plaintiff could assert against the originator of the mortgage.

## TWELFTH CAUSE OF ACTION

### Against All Defendants

### UNCONSIONABILITY

205.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through

204 above if fully set forth therein.

206.     Throughout the course of the May 2, 2006 and March 21, 2007 mortgage/deed
         transactions, an enormous disparity in bargaining power existed between Plaintiff and
         Defendants.  Defendants took advantage of Ms. Williams' fear and desperation about
         losing her home, her confusion, and her lack of legal representation to deceive her into
         signing a deed and mortgage papers that she clearly did not understand.  Defendants are
         experienced lenders who have engaged in numerous transactions of this nature.  By
         contrast, Plaintiff has very little experience in the area of mortgage lending and
         refinancing and lacks the knowledge to understand financing terms associated with
         mortgage lending and refinancing.  Defendants sought to profit from this disparity in
         bargaining power and sophistication and did so by deliberately targeting Plaintiff with
         misinformation.

207.     This blatant overreaching, through which Defendants exploited Ms. Williams through a
         gross disparity of bargaining power, constitutes procedural unconscionability.

208.     The terms of the transaction are so one-sided as to be abusive and unconscionable.
         Defendants exploited the disparity in bargaining power  to deceive Plaintiff  into entering
         into a highly disadvantageous transaction while under the belief that this was an
         affordable mortgage which would enable her to save her house.  Upon information and
         belief, Defendants knew that Ms. Williams could not receive a substantial benefit and
         that there was no reasonable probability Ms. Williams would be able to repay the loan.
         Said procedural and substantive unconscionability renders void and unenforceable the
         May 2, 2006 and March 21, 2007 mortgage/deed transactions.

209.     Defendants were unjustly enriched by this transaction, as they stripped Ms. Williams of
         her equity of over $85,000.

36

210.   Accordingly, a judgment should be entered declaring the May 2, 2006 and March 21,
       2007 mortgage/deed transactions to be null and void, and awarding Plaintiff actual and
       punitive damages, as well as costs and disbursements.

211.   DLJ Mortgage, as the supposed assignee and holder of the subject mortgage, is liable for
       all claims that the Plaintiff could assert against the originator of the mortgage.

**THIRTEENTH CAUSE OF ACTION**

**Against All Defendants**

**NEW YORK STATE GENERAL BUSINESS LAW § 349**

**("THE DECEPTIVE PRACTICES ACT")**

212.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through
       211 above as if fully set forth therein.

213.   Upon information and belief, Defendants conducted a business and furnished a service as
       those terms are defined in New York State General Business Law § 349 (the "Deceptive
       Practices Act").

214.   Defendants violated the Deceptive Practices Act in that their acts were misleading in a
       material way, unfair, deceptive, and contrary to public policy and generally recognized
       standards of business.  Such acts include, but are not limited to:

       a.    Deceiving Plaintiff into entering into a mortgage that provided her no tangible
             benefit and stripped valuable equity from her home by taking advantage of her
             limited mental capacity, her lack of education and financial sophistication, her
             fear and desperation about losing her home, and her isolation from professional
             advice or guidance from a friend or relative, thus exploiting a gross disparity in
             bargaining power;

       b.    Convincing Plaintiff to go through with two separate mortgage transactions by

37

making her believe that she was not eligible to obtain a loan from any other lender;

c.   Failing to provide a good faith estimate of settlement costs within three (3) business days after receipt of the loan application, in violation of 12 U.S.C. §2603 and Regulation X §3500.7.

d.   Taking advantage of Plaintiff by giving her two grossly unaffordable mortgages at high interest rates with little benefit to her;

e.   Misrepresenting to Plaintiff the nature of the documents she was signing and the nature and details of the transaction;

f.   Tricking Plaintiff into signing documents that transferred her property to a sham corporation so that Defendants could shield themselves against consumer protection laws; and

g.   Misrepresenting to Plaintiff at the time of the Aries loan transaction that she, and not a sham corporation, was taking out a loan;

215.   In the course of extending an equitable mortgage to Plaintiff, Defendants violated the Deceptive Practices Act by misrepresenting/omitting numerous other critical and material aspects of the financing transactions, as described above.

216.   Upon information and belief, Defendants have perpetrated similar schemes against many other homeowners in addition to Ms. Williams.

217.   Defendants' practices have had and may continue to have a broad impact on consumers throughout New York State.

218.   Plaintiff Ms. Williams suffered serious injury as a proximate result of the deceptive practices engaged in by Defendants.

219.   As a result of the aforesaid deceptive practices, this Court should declare null and void

the fraudulent May 2, 2006 and March 21, 2007 mortgage/deed transactions.

220.   Defendants are liable to Plaintiffs for actual damages, costs and disbursement, and attorneys' fees.

221.   DLJ Mortgage, as the supposed assignee and holder of the subject mortgage, is liable for all claims that the Plaintiff could assert against the originator of the mortgage.

## FOURTEENTH CAUSE OF ACTION

### Against Aries Financial, LLC, Albert O. London, Berkshire, Ronnie Ebrani, and Douglas Kahan

### NEW YORK STATE ANTI-PREDATORY LENDING LAW

222.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 221 above as if fully set forth therein.

223.   The mortgage with Aries Financial is a "high cost loan" as defined in New York State's anti-predatory lending law. The yield on treasury securities during the period in which Ms. Williams took out the Aries mortgage fluctuated between 4.9% and 5.0%. The annual percentage rate of 15% on Ms. William's Aries loan exceeds 8%of the yield on treasury securities having comparable maturities.

224.   In the course of extending an equitable mortgage to Plaintiff, Aries Financial, LLC violated New York State's Anti-Predatory Lending Law by:

   a.   Making a $250,800 loan without regard to Ms. Williams' ability to repay the loan;

   b.   Deceiving Ms. Williams into entering into a refinance that failed to provide her with a tangible net benefit. Instead, it stripped over $85,000 of equity from the home and called for an interest-only payment schedule for 7 years, at which point the full amount became due, thus making it impossible for Ms. Williams to pay down the principal of the loan and virtually guaranteeing that she would lose her

home;

c.      Upon information and belief, Aries Financial provided the mortgage broker with a kickback for arranging the subject transaction;

d.      Including in the agreement a oppressive mandatory arbitration clause in an attempt to keep Ms. Williams from being able to seek legal remedies in court for Defendants' misconduct; and

e.      Failing to provide a written notice and list of approved counseling services prior to the loan closing.

225.    Accordingly, a judgment should be entered declaring the 2006 mortgage/deed transactions to be null and void, and awarding plaintiff actual damages, attorneys' fees to the Legal Aid Society, as well as costs and disbursements.

**WHEREFORE,** Plaintiff Alavita Williams respectfully requests that this Court issue a judgment:

1.    Setting aside the deeds and mortgages dated May 2, 2006 and March 21, 2007 as void and with no legal effect; or, in the alternative

2.    Declaring that the deed and mortgages dated May 2, 2006 to be deemed an equitable mortgage subject to all New York State and Federal consumer protection claims pursuant to New York Real Property Law § 320 and to the common law doctrine of equitable estoppel;

3.    Rescinding the May 2, 2006 equitable mortgage transactions; voiding the deed that transferred title from plaintiff to 113-38 Springfield Blvd., LLC and terminating any security interest in Plaintiff's property created by the transaction;

4.    Awarding statutory damages pursuant to the Deceptive Practices Act;

5.    Awarding actual damages in an amount to be determined at trial but no less than

$1,000,000 pursuant to the Deceptive Practices Act, TILA, RESPA, the New York State Anti-Predatory Lending law, 42 U.S.C. § 3605, 42 U.S.C. §§ 1981 and 1982, and the common law doctrines of fraud, conspiracy to commit fraud, and unconsionability;

6.      Awarding punitive damages in an amount to be determined at trial pursuant to 42 U.S.C. § 3605, 42 U.S.C. §§ 1981 and 1982, and the common law doctrines of fraud, conspiracy to commit fraud, and unconsionability;

7.      Awarding costs and fees of this action pursuant to the Deceptive Practices Act, TILA, RESPA, the New York State Anti-Predatory Lending Law, 42 U.S.C. § 3605, 42 U.S.C. §§ 1981 and 1982, and the common law doctrines of fraud, conspiracy to commit fraud, and unconscionability;

8.      Awarding attorneys' fees pursuant to the Deceptive Practices Act, TILA, RESPA, the New York State Anti-Predatory Lending Law, and the common law doctrines of fraud and conspiracy to commit fraud;

9.      Enjoining the Defendants from engaging in similar deceptive and discriminatory acts and practices in the future pursuant to the Deceptive Practices Act, 42 U.S.C. § 3605 and 42 U.S.C. §§ 1981 and 1982; and

10.     Awarding such other and further relief as this Court deems just and proper.

Dated:  December 1, 2009
        Queens, New York

                        _____/s/_____
                        SUMANI LANKA (SL 3798)
                        The Legal Aid Society
                        120-46 Queens Boulevard
                        Kew Gardens, New York 11415
                        Tel. 718-286-2434
                        Fax. 646-616-9468
                        svlanka@legal-aid.org
                        Attorney for the Plaintiff

41

_____/s/_____

DONALD J. CURRY (DC 4897)
MARGARET A. RADZIK (MR 4557)
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas
New York, New York 10104
Tel. 212-218-2287
Fax. 212-218-2200
Attorney for the Plaintiff

## **VERIFICATION**

STATE OF NEW YORK    )
                           ) ss:
COUNTY OF QUEENS    )

Alavita Williams, being duly sworn, deposes and says:

I am the Plaintiff in the within action.  I have read the foregoing FIRST AMENDED

SUMMONS AND COMPLAINT and I know the contents of the same to be true to my own

knowledge, except as to the matters stated therein to be alleged upon information and belief, and

as to those matters, I believe them to be true.

ALAVITA WILLIAMS

Sworn to before me
this ___1___ day of December, 2009

NOTARY PUBLIC

**SUMANI LANKA**
**Notary Public, State of New York**
**No. 02LA6208013**
**Qualified in Kings County**
**Commission Expires: 6/22/_2013_**